ADELE P. YOUNG, RESPONDENT, v. SHEFFIELD FARMS
CO., INC., PROSECUTOR.

Argued October 8, 1947—Decided February 2, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the respondent, *Perry E. Belfatto.*

For the prosecutor, *George F. Lahey, Jr.*

The opinion of the court was delivered by

EASTWOOD, J.   This is a workmen's compensation case.
Adele P. Young, the respondent, widow of Martin A. Young,
Sr., sought an award of compensation for the death of her
husband allegedly arising out of and in the course of his
employment with the prosecutor herein.   Respondent's claim
petition was dismissed by the Workmen's Compensation
Bureau on the ground that she had failed to sustain the
burden of establishing any unusual episode causing her hus-
band's death which was chargeable to the employment.   On
appeal to the Hudson County Court of Common Pleas the
judgment of the Bureau was reversed, and an award of com-
pensation made in favor of the respondent herein.   *Certiorari*
has been allowed to review the latter determination.

There is no dispute that the decedent, Martin A. Young,
Sr., died while engaged in the performance of his duties as
an employee of the prosecutor.   This being so, the sole issue
involved here is whether respondent's deceased husband died
as the result of an accident arising out of his employment.
This court is presented with a debatable factual question for

review where, as here, the Workmen's Compensation Bureau finds the weight of the medical testimony in favor of the employer and the Common Pleas finds for the employee. We find that the Common Pleas erred in its determination.

Briefly, the facts on the day of decedent's death, January 8th, 1945, are that decedent was engaged on a wholesale milk route, commencing at 6 o'clock A. M., requiring him to make deliveries of milk and milk products to stores and other establishments, totaling approximately seventy-six cases, some cases holding paper containers weighing fifty-five to sixty pounds and others containing glass bottles weighing approximately forty pounds. His deliveries on that day required him to make thirty-seven stops. Decedent had made twenty-three stops and was making his twenty-fourth delivery around noon at the DeLuxe delicatessen. He had carried in eight cases of milk from his truck in the street to the rear of the delicatessen and had stacked them up in front of an icebox. He then proceeded to take out of the icebox the milk that already was there so that he could place therein the milk he was delivering, and then return the milk of the previous day to the box. While taking the containers of milk from the cases which he had brought into the store and while placing them into the icebox, he suffered a heart attack and died almost immediately. A death certificate was issued setting forth that the death was due to cardiac disease, due to syncope, probably myocardial in nature. The testimony on behalf of the respondent revealed that the decedent was fifty-four years of age; that his health had been excellent during the thirty years of his marriage; that he had never had a doctor with the exception of one occasion some twenty years previously, when he had cut his finger while in prosecutor's employ; that he had been doing similar work on the route in question for six months prior to his death and for twenty years on other routes. It is clear from the evidence that decedent was seized with a fainting spell while working; that he displayed sweating and evidence of shock; made gurgling sounds, accompanied by frothing at the mouth which the medical witnesses termed characteristic of terminal pulmonary edema, associated with sudden cardiac crisis. No

autopsy was performed. Respondent's medical witnesses attributed decedent's death to exertion at the time of his death and several hours prior thereto. Prosecutor's main medical witness testified that there was no causal relation between decedent's employment and his death; that the actual cause of death could have been determined only by an autopsy.

The medical witnesses who testified on behalf of the respondent were Doctors Hernandez, Meehan and Olcott. A hypothetical question embracing the facts hereinbefore mentioned was propounded to each of them. Dr. Hernandez testified that decedent died as the result of an acute cardiac attack, induced by excessive work on the day of his death. He conceded that one may suffer such a fatal attack without "any effort at all" while either sitting in a chair or sleeping; that an autopsy performed upon the decedent's body would have been the more scientific method to determine what had happened within this "man's body," and the resulting findings of much greater value. On cross-examination Dr. Hernandez, testifying as to value of an autopsy in such cases as that under review stated:

"Q. In other words, you base your conclusions now on things that have been found in other corpses which you have dissected? A. Yes, that's right.

"Q. But it would be no surprise to you if you should dissect this particular body to find the condition was, in fact, dissimilar, would it? A. Well, it wouldn't surprise me at all to find the same thing and find something else, too.

"Q. And it wouldn't surprise you to find something entirely different, would it? A. That's right."

The testimony of Doctors Meehan and Olcott was generally similar to that of Dr. Hernandez.

Dr. Kaufman, on behalf of the prosecutor, in answer to a hypothetical question, containing the facts and circumstances surrounding the death in question, testified "The cause of death in this case cannot be told," and:

"In my opinion, this case should have been autopsied, and if it were autopsied, then we would have been prepared here with the exact cause of death rather than a speculative hypothesis.

"By Mr. Lahey: *Q.* In your opinion, as an expert, is it possibly or probably accurate to say that a myocardial infarction due to coronary insufficiency occurred in this case? *A.* One of many causes could have been responsible for this man's death, and nobody will ever know.

"*Q.* Let's go to that point: If this man was suffering from myocardial infarction, need he have known that he had a bad heart? *A.* That's true, he might not have ever known it.

"*Q.* And he might, therefore, never have gone to a doctor? *A.* That's true.

"*Q.* And he might, therefore, have been described as a healthy man? *A.* That's right."

The facts of the case under review here are analogous to those in the case of *Lohndorf* v. *Peper Brothers Paint Co.,* 134 *N. J. L.* 156; 46 *Atl. Rep.* (*2d*) 439, affirmed by a majority vote of the Court of Errors and Appeals on the opinion of Chancellor Oliphant (at that time Supreme Court Justice), 135 *N. J. L.* 352; 52 *Atl. Rep.* (*2d*) 61, except in the Lohndorf case the evidence indicated that Lohndorf had been suffering from a diseased heart for sometime prior to his death, while here the evidence indicated that Young had enjoyed good health for many years prior to his death. Chancellor Oliphant, in speaking for the Supreme Court in *Lohndorf* v. *Peper Brothers Paint Co., supra, inter alia,* said:

"There is a presumption that any death from heart disease is the result of natural causes. Coronary thrombosis 'ordinarily ensues from coronary sclerosis or other morbid state. * * * The *onus* is on claimant to establish that the asserted accident was at least a contributory cause without which the occlusion would not have occurred.' *Schlegel* v. *H. Baron & Co.,* 130 *N. J. L.* 611. While the respondent produced the greater number of medical witnesses, the evidence on behalf of the prosecutor was weightier and more persuasive. 'The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.,* based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hy-

pothesis with reference to the possibility of other hypotheses.' *Gilbert* v. *Gilbert Machine Works, Inc., supra* [122 *N. J. L.* 533; 6 *Atl. Rep.* (2d) 216]; *Jones* v. *Newark Terminal and Trans. Co.,* 128 *N. J. L.* 190. This test the respondent has failed to meet."

We find as a fact, from the preponderance of the evidence, that decedent died of a cardiac attack not attributable to an industrial accident and, therefore, there was no accident within the intendment of the statute. *Kramerman* v. *Simon,* 20 *N. J. Mis. R.* 162; 25 *Atl. Rep.* (2d) 866; *affirmed,* 131 *N. J. L.* 250; 36 *Atl. Rep.* (2d) 132; *Lohndorf* v. *Peper Brothers Paint Co., supra.*

The judgment of the Hudson County Common Pleas is reversed without costs.

DONGES, J. (Dissenting.) I am unable to agree with the opinion of Mr. Justice Eastwood for the majority of this court.

It is my opinion that the facts warranted the conclusion reached by Judge Zeigener in the Hudson County Court of Common Pleas that the decedent met his death as the result of an accident arising out of and in the course of his employment. That it occurred in the course of employment is not questioned. It has been held that "an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. *Clover, Clayton & Co.* v. *Hughes,* 3 *B. W. C. C.* 275, 284, cited in *Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494.

In my opinion the facts come within the last cited case, and the judgment of the Hudson County Court of Common Pleas should be affirmed.